# EXHIBIT 1

AO 88B  (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Delaware

| | | |
|---|---|---|
| Palladian Partners, L.P. et al | ) | |
| *Plaintiff* | ) | C.A. No. _____ |
| v. | ) | |
| | ) | |
| . | ) | (If the action is pending in another district, state where: |
| *Defendant* | ) | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:  Cloudflare, Inc., c/o Registered Agent Solutions, Inc., 838 Walker Road Suite 21-2, Dover, DE 19904

☒  *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

| Place:    Quinn Emanuel Urquhart & Sullivan, LLP | Date and Time: |
|---|---|
| 500 Delaware Avenue, Suite 220 | July 25, 2025 at 9:00 a.m. |
| Wilmington, Delaware 19801 | |

☐  *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place:  N/A | Date and Time: N/A |
|---|---|
| | |

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:        July 11, 2025

|  | | |
|---|---|---|
| *CLERK OF COURT* | OR | |
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail, and telephone number of the attorney representing *(name of party)* _____
Palladian Partners, L.P. et al. _____ , who issues or requests this subpoena, are:
Michael Barlow
Quinn Emanuel Urquhart & Sullivan, LLP
500 Delaware Avenue, Suite 220
Wilmington, Delaware 19801
Tel. +1 (302) 302-4030
E: michaelbarlow@quinnemanuel.com

AO 88B  (Rev.  06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

C.A. No. _____

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 88B  (Rev.  06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*

  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

  **(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

  **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*

  **(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

  **(i)** fails to allow a reasonable time to comply;

  **(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

  **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

  **(iv)** subjects a person to undue burden.

  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

  **(i)** disclosing a trade secret or other confidential research, development, or commercial information;

  **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

  **(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

  **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

  **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*

  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

  **(i)** expressly make the claim; and

  **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified;

and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

## <u>ATTACHMENT A TO SUBPOENA</u>

### <u>Definitions</u>

1.  "Cloudflare", "You", or "Your" means Cloudflare, Inc., and all of its subsidiaries, affiliates, agents, employees, officers, directors, consultants, attorneys, or anyone acting or purporting to act on its behalf.

2.  "Account Holder Information" means any and all information used to register, access, or maintain a Cloudflare account or domain configuration, including names, addresses, emails, phone numbers, payment methods, IP addresses, user-agents, timestamps, and linked services.

3.  "Access Logs" means any data, logs, or metadata showing user interactions with Your systems or infrastructure, including but not limited to:

    (a)    inbound HTTP/S requests;

    (b)    IP addresses and geolocation data;

    (c)    timestamps and session data;

    (d)    user-agent strings and browser/device identifiers; and

    (e) response status codes and caching headers.

4.  "Communications" means any transmittal of information in any form, including but not limited to email, ticketing systems, chat logs, messages through support portals, and notifications between You and any domain owner, account holder, or third party.

5.  "Configuration Records" means documents or data showing how any domain associated with the $LIBRA token was configured on Cloudflare, including:

    (a)    DNS records and history (e.g., A, CNAME, MX, TXT records);

    (b)    SSL/TLS certificate requests and issuance logs;

    (c)    origin server information and IPs;

5

(d)    WAF/firewall rule settings; and

(e)    access control or bot management configurations.

6.    "Documents" is meant in the broadest possible sense and includes, but is not limited to, any writings and includes the following items, whether printed or recorded or reproduced by any other mechanical process or written or produced by hand, including drafts: agreements; communications; correspondence; electronic mail; text messages; telegrams; memoranda; summaries, records or reports of telephone conversations, personal conversations, interviews, meetings, conferences, investigations or negotiations; opinions or reports of consultants; diaries; graphs; reports; notebooks; charts; plans; drawings; sketches; maps; photographs; film; brochures; pamphlets; advertisements; circulars; press releases; letters; faxes; any marginal comments appearing in any documents; tape recordings; electronic transmissions; computer printouts and all other writings.  Documents shall not be limited in any way as to the form of storage (such as paper, microfiche, magnetic tape, magnetic disk, CD-ROM, DVD, optical disk, or other electronic-storage device).  A draft or non-identical copy of a document is a separate document within the meaning of this term.

7.    "Hosting Metadata" means any data reflecting Cloudflare's infrastructure support of the subject domain(s), including CDN settings, caching configurations, performance analytics, and records of configuration changes or deactivation/reactivation events.

8.    "IP Address" means any Internet Protocol address used to access, manage, or interact with Cloudflare systems, including login IPs, configuration access IPs, or visitor IPs recorded through Your services.

9.      "Custom Metadata or Labels" means any internal tags, classifications, annotations, or identifiers applied by Your systems to a user's Wallet Address, User Account, or associated data. This includes, but is not limited to.

10.     "Preservation" or "Legal Request Logs" means any records reflecting subpoenas, preservation notices, takedown demands, abuse complaints, or inquiries from law enforcement or regulatory bodies concerning the relevant domain(s) or token activity.

11.     "VivaLaLibertadProject.com" refers to the domain and any subdomains thereof, including all services and resources hosted, proxied, cached, or routed through Cloudflare systems, and any assets used to promote, sell, or facilitate the $LIBRA token.1.

12.     "Draft" means any earlier, preliminary, preparatory, or tentative version of all or part of a Document, whether or not such Draft was superseded by a later Draft and whether or not the terms of the Draft are the same as or different from the terms of the final Document. Each and every Draft of a document is a separate document for purposes of these document requests.

13.     "Geolocation" means any data or metadata that identifies, approximates, or is capable of being used to determine the physical location of a device, user, session, or network access point. This includes, without limitation:

(a)     GPS coordinates;

(b)     IP address-based location data;

(c)     Wi-Fi access point data;

(d)     cell tower triangulation;

(e)     browser or device location services;

(f)     location information inferred from user behavior or activity patterns; and

7

(g)     any third-party geolocation service data integrated into or accessed by Your systems.

"Geolocation" shall include both real-time and historical location data, whether precise or approximate, and regardless of whether such data was actively collected with user consent or passively logged by systems, applications, or network infrastructure.

14.    "Government" refers to any governing body, including the United States of America, the Republic of Argentina, INTERPOL, or any other federal government, state governments, and local governments, and their related agencies, entities, and agents.

15.    "Identify" means

(a)     with respect to a Person, providing

i.      their name,

ii.     their job title (if a natural Person),

iii.    their address and telephone number, and

iv.     a general description of the information about which the Person has knowledge, as sought below; and

(b)     with respect to a Document, providing

i.      its Bates number,

ii.     its custodian,

iii.    its date,

iv.     its author(s), and

v.      a general description.

16.    "IP Records" means any logs, data, metadata, or other records reflecting or relating to an Internet Protocol (IP) address associated with any interaction by a user with Your systems,

platforms, applications, APIs, or infrastructure. This includes, without limitation, records of IP addresses collected during:

(a)    account registration or login;

(b)    wallet access or usage events;

(c)    transaction initiation or approval;

(d)    communication with customer support or API endpoints; and

(e)    any device or session data reflecting geolocation, device fingerprinting, browser type, or timestamped access.

"IP Records" shall include, where available, any associated headers, cookies, session tokens, device IDs, or other data points that accompany or are linked to such IP address logs.

17.    "Metadata" means any data that provides information about other data, and includes, but is not limited to:

(a)    System Metadata: Information automatically recorded by a computer system or software when data is created, modified, accessed, transmitted, or deleted. Examples include:

i.    File creation and modification dates.

ii.    File size.

iii.    File format or extension.

iv.    User or device ID responsible for the action.

v.    Network path or storage location.

(b)     Application Metadata: Data embedded within or associated with files or records that describe how, when, and by whom a piece of data was created or modified. This may include:

    i.      Author name.

    ii.     Version history.

    iii.    Document properties (e.g., title, subject, tags).

    iv.     Edit or access timestamps.

(c)     Web and Session Metadata: Information automatically collected during user interactions with digital platforms or applications, including:

    i.      IP addresses.

    ii.     Browser type and version.

    iii.    Device identifiers.

    iv.     Session duration and timestamps.

    v.      Geolocation data.

    vi.     Referring URLs or dApps.

(d)     Blockchain Metadata: Information surrounding cryptocurrency transactions or smart contract interactions that is not necessarily on-chain but is logged or recorded by intermediary platforms, such as:

    i.      Transaction tags or internal notes.

    ii.     Off-chain identifiers associated with a wallet or transaction.

    iii.    User behavior data or risk scores.

    iv.     Tags or labels applied to wallet addresses or assets.

Metadata shall include both visible and hidden data, and may be stored separately from or embedded within the underlying file or database record.

18.    "Person" or "Persons" mean natural persons, proprietorships, corporations, companies, partnerships, trusts, joint ventures, groups, associations, organizations, and all other forms of organization or entity, including governmental bodies and agencies and all of its directors, officers, employees, representatives, or agents.

19.    "Records" means any and all written, typed, printed, recorded, graphic, photographic, digital, electronic, or machine-readable materials of any kind, whether stored on paper, film, tape, disk, server, cloud-based platform, database, or any other medium. For purposes of this request, "Records" includes, but is not limited to:

(a)    Emails, messages, chat logs, notifications, or other communications;

(b)    Files, documents, spreadsheets, presentations, notes, or memoranda;

(c)    Data logs, audit trails, metadata, or transaction histories;

(d)    User-generated content, system-generated data, or structured database entries;

(e)    Internal reports, analyses, charts, graphs, or dashboards;

(f)    Photographs, screenshots, recordings, or visual media; and

(g)    Any drafts, backups, archives, or deleted versions of the foregoing.

"Records" includes all versions, whether original, duplicate, altered, or redacted, and regardless of whether the information is held actively, archived, temporarily stored, or deleted but recoverable.

20.    "Relating" or "related" when used with respect to any subject, means and includes: analyzing, consisting, constituting, containing, compromising, commenting upon,

11

connected with, concerning, contradicting, dealing with, describing, embodying, establishing, evidencing, identifying, listing, memorializing, pertaining to, purporting, referring to, relating to, regarding, recording, responding to, reflecting, representing, stating, substantiating, showing, supporting, or with respect to, whether in whole or in part of having any logical or factual connection whatsoever with that subject, regardless of whether the factual connection is favorable or adverse to You.

21.    "Risk Scoring" means any score, flag, or label applied to a user, Wallet Address, or User Account based on internal or external assessments of financial risk, fraud risk, compliance risk, or security threat. This may include automated or manual evaluations based on KYC results, transaction histories, geolocation data, device patterns, IP usage, interaction with high-risk wallets or services, or known indicators of suspicious activity (e.g., links to mixers or sanctioned entities).

22.    "Session Data" means any record, log, or metadata reflecting a discrete period of user interaction with Your systems, platforms, services, or applications. This includes, without limitation:

(a)    timestamps of session start and end;

(b)    associated IP addresses, geolocation, and Device Identifiers;

(c)    authentication methods used during the session;

(d)    wallet addresses or accounts accessed;

(e)    user agent data (e.g., browser, OS, version);

(f)    API requests or actions taken during the session; and

(g)    session tokens, cookies, or access credentials issued, used, or invalidated.

"Session Data" includes data from both authenticated and unauthenticated sessions, and encompasses real-time and historical records, regardless of the session's duration or completeness.

**Instructions**

1.  In responding to this Subpoena, You are required to produce all responsive documents that are in Your possession, custody, or control or in the possession, custody, or control of Your agents, employees, or other representatives.  A document shall be deemed to be within Your control if You have the right to secure the document or a copy of the document from another person having possession or custody of the document.

2.  A reference to an organization or other legal entity (whether formed as a corporation, trust, partnership, or otherwise) means that entity and each and all of its: (a) predecessors, successors, subsidiaries, divisions, partnerships, limited partners, related parties, joint ventures, or affiliates; (b) present and former officers, employees, agents, representatives, trustees, directors, or its board of directors (either generally or committees thereof); (c) its attorneys, accountants, agents, representatives, and advisors (including investment bankers and public relations or other media consultants); (d) any professional employed or retained by that entity; and (e) all other Persons acting or purporting to act on its behalf.

3.  A reference to a natural person includes that person and each and all of his or her: (a) employees, agents, or representatives; (b) attorneys, accountants, agents, representatives, and advisors (including investment bankers and public relations or other media consultants); (c) any professional employed or retained by him or her; and (d) all other Persons acting or purporting to act on his or her behalf.

4.  Whenever used herein: (a) the singular shall be deemed to include the plural, and the plural shall be deemed to include the singular; (b) the term "including" shall be deemed to mean "including, but not limited to," and shall not be construed to limit the scope of any definition or Interrogatory herein; (c) the masculine shall be deemed to include the

feminine, and the feminine shall be deemed to include the masculine; (d) the disjunctive ("or") shall be deemed to include the conjunctive ("and"), and the conjunctive ("and") shall be deemed to include the disjunctive ("or"); and (e) each of the functional words "any," "each," "every," and "all" shall be deemed to include each of the others.

5.     The requests shall be deemed to be continuing so as to require supplemental productions as You obtain additional documents between the time of the initial production hereunder and the time of trial in these actions.

6.     Each requested document shall be produced in its entirety, without abbreviation or redaction, and shall include all attachments, appendices, exhibits, lists, schedules or other documents at any time affixed thereto.  If a document responsive to any request cannot be produced in full, it shall be produced to the extent possible with an explanation stating why production of the remainder is not possible.

7.     You must produce responsive documents as they have been kept in the usual course of business or shall organize or label them to correspond to the enumerated requests of this Subpoena.  If, after exercising due diligence to secure them, You cannot provide some or any of the requested documents, so state and provide all documents to the extent possible, specifying the reason for Your inability to produce the remainder of the documents, and stating whatever information or knowledge You have concerning each document not produced.

8.     If any document is withheld under any claim of privilege, including without limitation, attorney-client privilege and attorney work product, You should provide the following information with respect to such document: (a) the date of the document; (b) the name of its author(s) or preparer(s); (c) the name of each person who was sent or furnished with the

document or a copy thereof; (d) the title or description of the document sufficient to identify it without revealing the information for which privilege is claimed; (e) the claim of privilege under which it is withheld; and (f) a description of the subject matter of the document in sufficient detail to support Your contention that the document is privileged.

9.    If any requested document or other document potentially relevant to this action is subject to destruction under any document retention or destruction program, the document(s) should be exempted from any scheduled destruction and should not be destroyed until the conclusion of this action or unless otherwise permitted by the Court.

10.   If an objection is made to any request, state Your objection and the ground or grounds with particularity in Your written response.  If an objection is made only to part of the request, identify that part in Your written response and state Your objection and the ground(s) therefore.

11.   Terms not specifically defined shall be given their ordinary meanings as You understand them to be used in the trade or pursuant to ordinary usage.

12.   When producing documents and records in response to these requests, You should produce data as it exists and is correlated within Your systems. If Your systems do not maintain linkages between certain data points (e.g., between specific wallet addresses and user accounts, or between API calls and individual transactions), You are not required to create such linkages for purposes of this production, but should clearly indicate the limitations of available correlations in Your response.

13.   Your response should, where applicable, distinguish between data available for custodial wallet services (where You maintain access to private keys or seed phrases) versus non-custodial wallet services (where You provide interface or authentication services only).

The scope and granularity of available data may differ significantly between these service types.

## REQUESTS

### REQUEST NO. 1:

All Documents or Records sufficient to identify the account holder(s) associated with the domain https://www.vivalalibertadproject.com/, including but not limited to:

(a)     Full name(s), mailing address(es), email address(es), and telephone number(s);

(b)     Cloudflare account creation and registration dates;

(c)     IP address(es) and timestamp(s) associated with account creation, logins, or account access;

(d)     Payment methods used, including credit card or PayPal billing information (e.g., last four digits, billing ZIP code);

(e)     Any internal account notes or linked accounts (via cookies, IP overlap, or device fingerprinting);

(f)     Account recovery or administrative contact information.

### REQUEST NO. 2:

All Documents or Records related to website configuration, hosting, and backend services Cloudflare provided for the domain https://www.vivalalibertadproject.com/, including but not limited to:

(a)     DNS configuration and history (A, AAAA, MX, TXT, CNAME records, and any updates);

(b)     Origin server IP addresses and associated server configurations;

(c)     TLS/SSL certificate registration history and issuance logs;

(d)     Content Delivery Network (CDN) caching policies, WAF/firewall settings, and rule changes;

(e)     Domain-level analytics settings, performance optimizations, or Rocket Loader usage;

(f)     Any authentication or access control settings enabled on the Cloudflare account;

(g)     Any linked domains or subdomains controlled through the same Cloudflare dashboard.

**REQUEST NO. 3:**

All Traffic Logs, Access Records, and Metadata collected by Cloudflare related to the domain https://www.vivalalibertadproject.com/ for the period **January 1, 2025 through the date of production**, including but not limited to:

(a)     Timestamped access logs showing source IP addresses, user-agent headers, and geolocation metadata;

(b)     Referrer headers, requested URI paths, and response status codes;

(c)     Log records associated with POST/GET requests made via the domain or underlying APIs;

(d)     DDoS mitigation or rate-limiting event logs;

(e)     Metadata derived from Cloudflare's bot detection or fingerprinting systems;

(f)     Country, city, and ASN-level data on visitors accessing the domain;

(g)     Traffic volume metrics, including daily/monthly request counts and bandwidth.

**REQUEST NO. 4:**

All Communications between Cloudflare and any person or entity controlling or affiliated with the domain https://www.vivalalibertadproject.com/, including but not limited to:

(a)     Emails, support tickets, or chat transcripts sent to or from the account holder(s);

    (b)      Inquiries or responses relating to abuse reports, DMCA requests, fraud complaints, or phishing alerts;

    (c)      Notices of suspension, termination, account lockout, or legal hold;

    (d)      Requests or complaints submitted by third parties concerning site content or promotion of digital assets;

    (e)      Internal memos or notes generated by Cloudflare personnel concerning domain-related investigations or escalations.

**REQUEST NO. 5:**

All Documents or Records reflecting any preservation requests, legal holds, subpoenas, or Government inquiries served upon Cloudflare in relation to:

    (a)      The domain https://www.vivalalibertadproject.com/;

    (b)      The $LIBRA token or token project;

    (c)      Hayden Davis; Gideon Davis;  Charles Thomas (Tom) Davis, Kelsier Labs LLC; Julian Peh, KIP Protocol Inc.; Benjamin Chow; Meteora; Mauricio Novelli; Manuel Torres Godoy;

    (d)      Any investigation relating to token promotion, investor communications, or associated conduct.

**REQUEST NO. 6:**

All Geolocation Records collected or maintained by Cloudflare related to the domain https://www.vivalalibertadproject.com/ for the period January 1, 2025 through the date of production, including but not limited to:

    (a)      IP address-based geolocation data;

(b)    Browser-based location services data (including GPS, Wi-Fi, or cell tower data where available);

(c)    Location metadata embedded in session logs, access records, or analytics tools;

(d)    Inferred location data based on access patterns, traffic source headers, or ASN mappings;

(e)    Any location-related risk scoring or flagging performed by Cloudflare for access to the domain.

**REQUEST NO. 7:**

All Session Data and associated metadata for any sessions involving the domain https://www.vivalalibertadproject.com/, for the period January 1, 2025 through the date of production, including but not limited to:

(a)    Session start and end timestamps;

(b)    IP addresses and geolocation data associated with the session;

(c)    Browser or device identifiers (including user-agent strings or fingerprinting data);

(d)    Authentication methods used (if any);

(e)    Referrer headers, cookie/session token data, or other credentialing artifacts used to manage session state;

(f)    Any logs showing session creation, termination, or anomalies (e.g., multi-region logins, bot behavior flags).

**REQUEST NO. 8:**

All Documents or Records reflecting Custom Metadata or Labels applied by Cloudflare to the domain https://www.vivalalibertadproject.com/, or to any associated IP address, account, or session, including:

21

(a)    Risk scoring or security classification labels (e.g., "malicious," "abuse," "verified," "trusted," "flagged");

(b)    Internal tagging or annotations used for fraud prevention, abuse tracking, or customer support triage;

(c)    Domain reputation scores or heuristic flags generated or used by Cloudflare;

(d)    Any metadata generated through bot-detection, challenge-response systems, or behavioral scoring engines.

**REQUEST NO. 9:**

All Documents or Records sufficient to identify the account holder(s) associated with the domain https://www.meteora.ag/, including but not limited to:

(a)    Full name(s), mailing address(es), email address(es), and telephone number(s);

(b)    Cloudflare account creation and registration dates;

(c)    IP address(es) and timestamp(s) associated with account creation, logins, or account access;

(d)    Payment methods used, including credit card or PayPal billing information (e.g., last four digits, billing ZIP code);

(e)    Any internal account notes or linked accounts (via cookies, IP overlap, or device fingerprinting);

(f)    Account recovery or administrative contact information.

**REQUEST NO. 10:**

All Documents or Records related to website configuration, hosting, and backend services Cloudflare provided for the domain https://www.meteora.ag/, including but not limited to:

(a)     DNS configuration and history (A, AAAA, MX, TXT, CNAME records, and any updates);

(b)     Origin server IP addresses and associated server configurations;

(c)     TLS/SSL certificate registration history and issuance logs;

(d)     Content Delivery Network (CDN) caching policies, WAF/firewall settings, and rule changes;

(e)     Domain-level analytics settings, performance optimizations, or Rocket Loader usage;

(f)     Any authentication or access control settings enabled on the Cloudflare account;

(g)     Any linked domains or subdomains controlled through the same Cloudflare dashboard.

**REQUEST NO. 11:**

All Communications between Cloudflare and any person or entity controlling or affiliated with the domain https://www.meteora.ag/, including but not limited to:

(a)     Emails, support tickets, or chat transcripts sent to or from the account holder(s);

(b)     Inquiries or responses relating to abuse reports, DMCA requests, fraud complaints, or phishing alerts;

(c)     Notices of suspension, termination, account lockout, or legal hold;

(d)     Requests or complaints submitted by third parties concerning site content or promotion of digital assets;

(e)     Internal memos or notes generated by Cloudflare personnel concerning domain-related investigations or escalations.

**REQUEST NO. 12:**

All Documents or Records reflecting any preservation requests, legal holds, subpoenas, or Government inquiries served upon Cloudflare in relation to:

(a)     The domain https://www.meteora.ag/;

(b)     The $LIBRA token or token project;

(c)     Hayden Davis; Gideon Davis;  Charles Thomas (Tom) Davis, Kelsier Labs LLC; Julian Peh, KIP Protocol Inc.; Benjamin Chow; Meteora; Mauricio Novelli; Manuel Torres Godoy;

(d)     Any investigation relating to token promotion, investor communications, or associated conduct.

**REQUEST NO. 13:**

All Documents or Records reflecting Custom Metadata or Labels applied by Cloudflare to the domain https://www.meteora.ag/, or to any associated IP address, account, or session, including:

(a)     Risk scoring or security classification labels (e.g., "malicious," "abuse," "verified," "trusted," "flagged");

(b)     Internal tagging or annotations used for fraud prevention, abuse tracking, or customer support triage;

(c)     Domain reputation scores or heuristic flags generated or used by Cloudflare;

Any metadata generated through bot-detection, challenge-response systems, or behavioral scoring engines.

**REQUEST NO. 14:**

Deposition pursuant to Federal Rule of Civil Procedure 30(b)(6) from one or more designated corporate representatives of Cloudflare who are most knowledgeable about the responsive documents and the issues related thereto.

**REQUEST NO. 15:**

Deposition of a representative of Cloudflare selected by Petitioners based on their review of the responsive documents to the extent that Petitioners deem that the deposition of the Federal Rule of Civil Procedure 30(b)(6) designated corporate representatives of Cloudflare does not resolve all of Petitioners' discovery queries.